JS-6

Drevet Hunt (Bar No. 240487)
Email: dhunt@cacoastkeeper.org
CALIFORNIA COASTKEEPER
1017 L St PMB 308
Sacramento, California 95814-3805
Phone: (415) 606-0864

Benjamin Harris (Bar No. 313193)
Email: ben@lawaterkeeper.org
Erina Kwon (Bar No. 235079)
Email: erina@lawaterkeeper.org
LOS ANGELES WATERKEEPER
360 E 2nd Street, Suite 250
Los Angeles, CA 90012
Phone: (310) 394-6162

Attorneys for Plaintiff
LOS ANGELES WATERKEEPER

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES WATERKEEPER, a
California non-profit association,

        Plaintiff,

    v.

STERICYCLE, INC., a Delaware
corporation,

        Defendant.

Case No.: 2:24-cv-10578-E

~~[PROPOSED]~~ **CONSENT DECREE**

# CONSENT DECREE

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS,** Defendant Stericycle, Inc. ("Defendant") operates a medical waste treatment and transfer facility at 2775 East 26th Street, Vernon, California 90023, under Waste Discharger Identification number 419I019039 ("Facility"). The Facility includes a parking lot located across East 26th Street at approximately 2613 S. Soto Street ("Parking Lot") where personal employee vehicle and short-term truck and trailer parking occurs (the Facility, excluding the Parking Lot, will hereinafter be referred to as the "Main Facility");

**WHEREAS,** the Main Facility's industrial activities include medical waste treatment and transfer. The Main Facility is categorized under Standard Industrial Classification ("SIC") Code 4953, covering refuse systems;

**WHEREAS,** storm water discharges associated with industrial activity at the Main Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ ("General Permit" or "Permit" and as hereinafter defined), and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS,** Plaintiff asserts that Defendant's operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees, including Defendant, to comply with, inter alia, the following mandates: (1) develop and implement a SWPPP and a MIP, (2) control pollutant discharges using, as applicable, BAT or BCT to prevent or reduce pollutants through the development and application of BMPs, which must be detailed in and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards, and (4) implement a monitoring and reporting program, including the MIP, designed to assess compliance with the Permit;

**WHEREAS**, on July 16, 2024, Plaintiff issued a notice of intent to file suit ("60-Day Notice Letter") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director Los Angeles Regional Water Quality Control Board ("Regional Board"), the Regional Administrator of EPA Region IX, and the U.S. Attorney General of the U.S. Department of Justice, alleging violations of the Clean Water Act and the General Permit;

**WHEREAS**, on December 9, 2024, Plaintiff filed a complaint against Defendant in the Central District Court of California ("Court"), Civil Case No. 2:24-cv-10578 ("Complaint");

**WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Defendant's discharges of pollutants into storm drains and surface waters, including the Los Angeles River and connected waterbodies including San Pedro Bay and the Pacific Ocean (collectively, "Receiving Waters");

**WHEREAS**, the Defendant disputes and otherwise denies the allegations in Plaintiff's Complaint;

**WHEREAS**, Plaintiff and Defendant (collectively, "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into this Consent Decree

setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice Letter and Complaint without further proceedings;

**WHEREAS**, without admission of liability and as set forth in this Consent Decree, Defendant commits to substantial capital improvements as described herein, which include construction of advanced BMPs and new engineering controls to manage storm water at the Facility;

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local laws, rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.    The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2.    Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

3.    Defendant waives its right to challenge whether the Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4.    Defendant waives its right to challenge whether Plaintiff has standing to bring this action.

5.    The Court shall retain jurisdiction over this matter for the purposes of interpreting, modifying, or enforcing the terms and conditions of this Consent Decree and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree, for the Term (as that term is defined below) or as long as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term. The Court shall have the power to

enforce this Consent Decree with all available legal and equitable remedies, including contempt.

## I.    OBJECTIVES

6.    It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged and that could have been alleged, by Plaintiff in its 60-Day Notice Letter and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7.    In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II.    AGENCY REVIEW AND DEFINITIONS

### A.    AGENCY REVIEW OF CONSENT DECREE

8.    <u>Agency Review</u>. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the United States EPA (the "Federal Agencies") for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier ("Agency Review Period"). In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9.    <u>Court Notice</u>. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period.

10. <u>Entry of Consent Decree</u>. Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

**B.    DEFINITIONS**

11. Unless otherwise expressly defined herein, terms used in this Consent Decree have the meaning assigned to them in the General Permit, the CWA, or in the regulations or rules promulgated under the CWA. The definitions of the terms defined above or below in this Definition section, shall apply to interpret and enforce the terms of this Consent Decree:

a.    "BAT" means the Best Available Technology Economically Achievable as that term is defined in Attachment C (Glossary) of the General Permit.

b.    "BCT" means the Best Conventional Pollutant Control Technology, as that term is defined in Attachment C (Glossary) of the General Permit and collectively with BAT is referred to herein as "BAT/BCT."

c.    "BMPs" means Best Management Practices as that term is defined in Attachment C (Glossary) of the General Permit.

d.    "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

e.    "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

f.    "Design Storm" means the volume and flow rate of runoff produced from an 85th percentile, 24 hour storm.

g.    "Discharge Point" means each discharge location designated in the then-current SWPPP for the Main Facility.

h.    "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

i.    "Entry Date" means the day this Consent Decree is approved and entered by the Court.

j.    "Facility" has the meaning set forth in the Recitals.

k.    "Forecasted Rain Event" means a forecasted rain event with a 50% or greater probability of precipitation of 0.1 inches or more forecasted at least 24 hours prior to its occurrence, with minimum antecedent dry period of 72 hours prior to the beginning of the rain event, as determined by the National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) for "90058, Vernon, CA, USA."

l.    "General Permit" or "Permit" has the meaning set forth in the Recitals and shall mean the then-effective version, even if the version of the Permit in effect as of the Effective Date is subsequently revised, modified or amended. However, any reference in this Consent Decree to specific sections or subsections of the General Permit, including but not limited to Permit NALs listed in Table 1, that are subsequently moved or renumbered in a subsequent version of the General Permit shall be to such subsequent reference(s) as if set forth herein.

m.    "Main Facility" has the meaning set forth in the Recitals.

n.    "MIP" means a Monitoring Implementation Plan as that term is defined in Attachment C (Glossary) of the General Permit.

o.    "Parking Lot" has the meaning set forth in the Recitals.

p.    "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A.1 and Attachment C (Glossary) of the General Permit.

q.    "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B.1 of the General Permit.

r.    "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

s.   "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

t.   "SWPPP" means a Storm Water Pollution Prevention Plan.

u.   "Term" means the period between the Effective Date and the "Termination Date."

v.   "Termination Date" means the latest of those dates described in Paragraph 11, subsections v.i-.iii, unless terminated earlier by a grant of a Notice of Termination ("NOT") pursuant to Section II.C of the General Permit or a Notice of Non-Applicability ("NONA") pursuant to Section XX.C of the General Permit and under such circumstances the "Termination Date" shall have meaning set forth in Paragraph 11.v.iv. or 11.v.v., respectively.

   i.    June 30 following three (3) years from the Effective Date.

   ii.   June 30 following two (2) years after the BMPs described in Paragraph 15 below are fully installed and operational.

   iii.  Seven (7) days from the conclusion of any proceeding or process to enforce the Consent Decree initiated prior to the later of the dates in Paragraphs 11.v.i and 11.v.ii above.

   iv.   The date upon which Defendant obtains a NOT from the Los Angeles Regional Water Quality Control Board ("Regional Board") for the Facility.

   v.    The date upon which Defendant obtains a NONA from the Regional Board for the facility.

   vi.   In the event of a NOT or NONA under Paragraph 11, subparagraphs .v.iv - v: (a) Defendant shall concurrently give notice to Plaintiff, pursuant to Paragraph 57, of its submission of a NOT or NONA; and (b) all monetary obligations due under this Consent Decree, as of the notice of the NOT or NONA, if any, shall become

due and payable within fifteen (15) days of submission of the NOT or NONA request.

w. "Wet Season" means the period beginning October 15th of any given calendar year and ending April 30th of the following calendar year.

## III.    COMMITMENTS OF THE SETTLING PARTIES

### A.    STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

12.    <u>Non-Storm Water Discharge Prohibition.</u> Any unauthorized non-storm water discharge, as defined in the General Permit, shall be a violation of this Consent Decree, except for any unauthorized non-stormwater discharges occurring prior to December 1, 2025, to allow for the construction of the advanced BMPs described in Paragraph 15 below at the Facility.

13.    <u>Rain Gauge/Sensor.</u> Defendant shall install and maintain an electronic rain gauge or sensor at the Facility within 30 days of the Effective Date. The rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1 inches, and record start/stop times and non-cumulative precipitation for each rain event. During the Term, Defendant shall collect data using the gauge/sensor for all precipitation events to the nearest 0.1 inch, including start/stop times. Data from the rain gauge/sensor shall be conclusive of precipitation quantities and timing for purposes of this Consent Decree.

14.    <u>Current and Additional Best Management Practices.</u> Defendant shall: implement BMPs identified in its SWPPP; develop and implement the BMPs identified in Paragraph 15, and to the extent necessary, develop and implement additional BMPs to comply with the provisions of this Consent Decree and the General Permit, including, as may be necessary, to comply with BAT/BCT-level pollutant reductions.

15.    <u>Structural BMPs for the Main Facility.</u> Not later than December 1, 2025, Defendant shall develop and implement the following structural BMPs at the Main Facility:

a.  Patch, pave, or otherwise resurface areas of degraded pavement or asphalt in the portion of the Main Facility located west of the Roll-Off Staging Area;

b.  Install trench drains and berms at all Main Facility driveways associated with industrial activity to modify onsite drainage as necessary to capture and route all storm water from a Design Storm to the Main Facility's storm water holding tanks;

c.  Install additional storm water storage capable of retaining all runoff from the Main Facility's industrial areas up to and including a Design Storm;

d.  Install gutters, piping, and storm water storage necessary to capture and route all storm water from a Design Storm in connection with the roof of Main Facility where autoclave exhausts are located to storm water holding tanks;

e.  Install gutters, piping, and/or downspouts at the remaining building roofs of the Main Facility, as necessary, to divert all storm water to the municipal separate storm water system in compliance with all applicable laws, permits, and regulations; and

f.  Resurfacing and installation of trench drains within the roll-off container storage building.

16.   <u>Non-Structural BMPs for the Main Facility</u>. Not later than 90 days from the Effective Date, Defendant shall develop and implement the following non-structural BMPs at the Main Facility:

a.  Wet Season Forecasted Rain Event Protocols. Defendant shall develop policies and procedures to undertake within twenty-four (24) hours prior to a Forecasted Rain Event during the Wet Season, including the following:

i.    inspect all drains to ensure they are free of debris, sediment, garbage, or other matter that may impede flow;

      ii.    remove, cover, or move into a covered structure any exposed waste material, open debris and scrap bins, and open trash cans sufficient to prevent exposure to rainfall; and

      iii.   inspect on-site storm water storage to ensure capacity for Forecasted Rain Events.

b.  Remove and prevent the outside storage of:

      i.    all inutile and/or abandoned racks, vehicles, equipment, paint, and waste scrap materials from the Main Facility; and

      ii.   all unattended drip pans or open untreated waste containers.

c.  Institute an equipment and vehicle maintenance program that ensures:

      i.    no maintenance activities occur outdoors during wet weather, unless such maintenance is required for safe operation of the Facility, *e.g.*, the forklift breaks down in a location that prevents ingress/egress;

      ii.   maintenance activities occur only in designated work areas or beneath covered maintenance areas; and

      iii.   when maintenance activities must be performed outdoors, immediate action shall be taken to contain, capture, and clean up any discharge or spills of waste fluids to the ground including, but not limited to, laying down absorbent before conducting any maintenance activities.

d.  Implement weekly inspections of exterior work and maintenance areas and hazardous materials and waste storage areas to ensure proper procedures are being followed and to evaluate for possible discharges.

e.  Maintain spill clean-up supplies at all fluid storage, hydraulic press, and maintenance areas.

///

///

17. <u>BMP Completion Report.</u>

    a. Not later than December 15, 2025, Defendant shall prepare and deliver to Plaintiff a BMP Completion Report which documents, in writing and with photographs, as applicable, that each of the BMPs listed in Paragraph 15 have been implemented.

    b. Upon receipt of the BMP Completion Report, Plaintiff shall have thirty (30) days to object to the BMP Completion Report or any portion thereof.  However, the only allowable objections shall be one(s) based on Plaintiff's assertion that Defendant failed to complete the BMPs identified in Paragraph 15. Within thirty (30) days of receiving Plaintiff's objection(s), Defendant shall respond in writing why Plaintiff's objection(s) are not warranted and/or confirming modifications, changes, or additional work to address Plaintiff's objections.

    c. The Parties shall work in good faith to resolve any disputes in connection with the BMP Completion Report.  Any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below.  The Parties shall work cooperatively, and in good faith, to modify any of the deadlines under this Consent Decree, if necessary.

18. <u>Modified or Changed BMPs</u>.  After the Effective Date, and in the absence of an Exceedance and/or an Action Plan, as described in Section III.C. Defendant may elect to modify, change, or replace existing BMPs at the Main Facility.  For any such proposed work Defendant will prepare a "BMP Proposal" to be submitted to Plaintiff for review and approval as follows:

    a. Each BMP Proposal shall include: (1) the identification of the BMP to be modified, changed or replaced in connection with storm water management; (2) the rational for the proposed modification, change or

replacement including but not limited to, financial basis, and/or improved stormwater quality; (3) a technical narrative as to how the BMP will achieve compliance with the numeric limits expressed in Section III.C, Table 1 below; (4) the proposed schedule(s) for implementation; (5) designs, plans, and/or schematics depicting the BMP and its deployment at the Main Facility; (6) environmental impact assessment; and (7) any proposed SWPPP amendment related to the new BMP.

b. Upon receipt of a BMP Proposal, Plaintiff shall have thirty (30) days to object to the BMP Proposal or any portion thereof. Within thirty (30) days of receiving Plaintiff's objection(s), Defendant shall respond in writing why Plaintiff's objection(s) are not warranted and/or confirming modifications, changes, or additional work in connection with the BMP Proposal.

c. The Parties shall work in good faith to resolve any disputes with respect to a BMP Proposal, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. The Parties shall work cooperatively to amend this Consent Decree, if necessary, to incorporate work identified in a BMP Proposal.

d. BMP Proposal Payments. Defendant shall make a payment of Seven Thousand Five Hundred Dollars ($7,500.00) each time a BMP Proposal is submitted to Plaintiff. Payments are due within fourteen (14) days of the date that the applicable BMP Proposal is submitted and shall be made to "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o, Senior Attorney, 360 E. 2nd Street, Suite 250, Los Angeles, CA 90012.

///
///

19. <u>The Parking Lot.</u>

    a. Within sixty (60) days of the Effective Date, Defendant shall implement policies and procedures necessary to ensure that the only activity occurring on the Parking Lot is the parking of personal employee vehicles and the short-term (no longer than seven (7) days) parking of trucks and trailers excepting trucks trailering roll off container bins with treated or untreated medical waste which are prohibited from using the Parking Lot.

    b. The Parking Lot shall not be used for the storage of any industrial materials, abandoned or inutile equipment, or the placement of roll off bins.

    c. The Parking Lot shall not be used for equipment or vehicle maintenance.

    d. Defendant shall request and use good faith efforts to cause the owner of the Parking Lot to patch, pave, or otherwise resurface areas of degraded pavement or asphalt.

    e. Nothing in this Paragraph 19 shall be deemed or construed to require Defendant to perform work to patch, pave, or otherwise resurface areas of degraded pavement or asphalt in the Parking Lot.

**B.** **SAMPLING AT THE FACILITY**

20. <u>Storm Water Monitoring</u>. Defendant shall develop a monitoring program consistent with the General Permit. During the Term, Defendant shall collect samples of storm water discharge from each Discharge Point from at least four (4) Qualifying Storm Events, including the first two (2) QSEs during the first half of the Reporting Year (July 1 to December 31) and the first two (2) QSEs during the second half of the Reporting Year (January 1 to June 30), to the extent four (4) QSEs occur during the Reporting Year. Such sampling shall take place as soon as possible within the four (4) hour period required by the General Permit § XI.B.5.

21.     <u>Sampling Parameters</u>. All samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1. Should Defendant intend to conduct sampling for any additional parameters that are listed in 40 C.F.R. § 131.38 and/or in the General Permit for any reason, including without limitation as a result of changed operations, a revised pollutant source assessment, or a new mandate from a regulatory agency, such parameter shall be incorporated into this Consent Decree as if listed in Table 1 for all purposes, including any Action Plan requirements (as defined below). Defendant shall immediately notify Plaintiff of its intent to conduct sampling for any such additional parameters and the Parties shall meet and confer regarding the applicable Table 1 limit for such purposes within ten (10) days of such notification.

22.     <u>Laboratory and Holding Time</u>. Except for pH samples, Defendant shall deliver all samples to a California-certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a pH strips or a portable instrument that is calibrated and used according to the manufacturer's instructions as otherwise permitted or required by the General Permit.

23.     <u>Detection Limit</u>. Defendant shall request that the laboratory use analytical methods adequate to detect the individual pollutants at or below the values specified in the General Permit and Table 1 below.

24.     <u>Reporting</u>.

    a.     <u>Sampling</u>. Defendant shall provide complete laboratory results of all samples collected at the Main Facility to SMARTS in accordance with the General Permit.

    b.     <u>Storage</u>. On a monthly basis during the Wet Season, Defendant shall submit to Plaintiff via email a report and/or provide documentation regarding storm water storage that shall include the following:

        i.    Telemetry data which includes:

           1.  The date and time and total off-haul volume of each storm water hauling event during the month;

           2.  A summary of all rain events that occurred during the month between hauling dates, including total rainfall;

           3.  Any instances where retention capacity was exceeded or overflow events occurred during the month; and

        ii.   Whether storm water was discharged from the Main Facility during such events.

**C.**    **REDUCTION OF POLLUTANTS IN DISCHARGES**

25.  <u>Table 1 Numeric Limits</u>. Defendant shall develop and implement BMPs for discharges of storm water associated with industrial activity from the Facility that reduce pollutant concentrations in discharges to levels below those in Table 1.

///
///
///
///
///
///
///
///
///
///
///

**TABLE 1[1]**

| Parameter | Numeric Limit | Source of Limit |
|---|---|---|
| Oil and Grease | 15.0 mg/L | Permit NAL |
| Total Suspended Solids | 100.0 mg/L | Permit NAL |
| pH | 6-9 S.U. | Permit NAL |
| Ammonia | 2.14 mg/L | Permit NAL |
| Chemical Oxygen Demand | 120.0 mg/L | Permit NAL |
| Lead | 0.094 mg/L (instantaneous) | LA River NEL |
| Cyanide | 0.022 mg/L | Permit NAL |
| Arsenic | 0.15 mg/L | Permit NAL |
| Mercury | 0.0014 mg/L | Permit NAL |
| Selenium | 0.005 mg/L | Permit NAL |
| Silver | 0.0183 mg/L | Permit NAL |
| Zinc | 0.159 mg/L (instantaneous) | LA River NEL |
| Copper | 0.067 mg/L (instantaneous) | LA River NEL |
| Iron | 1.0 mg/L | Permit NAL |
| Aluminum | 0.75 mg/L | Permit NAL |
| *E. Coli* | 320 cfu/100 mL | Part 3 of the Water Quality Control Plan for Inland Surface Waters, Enclosed Bays, and Estuaries of California |

26.    <u>Table 1 Exceedances</u>. An "Exceedance" of Table 1 is defined as follows: (a) where the concentration of the same pollutant in any two (2) storm water samples from the same discharge point at the Facility during a Reporting Year exceeds the annual numeric limit set forth in Table 1; and/or (b) where the concentration of any pollutant in any one (1) storm water sample from the Facility exceeds an instantaneous numeric limit set forth in Table 1.

---

[1] If the applicable Permit NALs or LA River NELs are subsequently revised in a subsequent version of the General Permit, the Table 1 Numeric Limit shall be interpreted to include such subsequent NAL/NEL as if set forth herein.

27.     <u>Action Plan</u>. Starting December 1, 2025, and for the remainder of the Term, if (a) there is an unauthorized non-storm water discharge in violation of Paragraph 12, (b) storm water samples demonstrate an Exceedance as defined above, or (c) the onsite storm water storage or trench drain discharges untreated storm water as a result of less than a Design Storm precipitation event for the Main Facility (each, a "Trigger Event"), Defendant shall prepare and submit to LA Waterkeeper a plan to address the conditions causing the Trigger event ("Action Plan"). The complete Action Plan shall be submitted to LA Waterkeeper within forty-five (45) days of the applicable Trigger Event.

      a.    <u>Action Plan Requirements</u>. Each complete Action Plan submitted shall include as applicable: (1) the Trigger Event; (2) an assessment of the source or cause of the Trigger Event; (3) the identification of additional BMPs that shall be implemented to achieve compliance with the numeric limit(s), unauthorized non-storm water discharge prohibition, and/or Design Storm standard for the Main Facility, as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs.

      b.    The time schedule(s) for implementation shall ensure that all BMPs are implemented in a reasonable and diligent manner, but in no event later than ninety (90) days following the submission of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling Parties. LA Waterkeeper will not unreasonably deny a request for a later implementation date. Within twenty-one (21) days of each of the BMPs set forth in the Action Plan being implemented, Defendant shall confirm to LA Waterkeeper in writing, with photographs, that such BMP has been implemented as set forth in the Action Plan.

c.   <u>Action Plan BMPs</u>. The following BMPs should generally be evaluated for inclusion in Action Plans to prevent non-storm water discharges, attain the Table 1 levels, and/or prevent discharges in events smaller than a Design Storm for the Main Facility, as applicable:

   i.   <u>Treatment Systems</u>. Installing an advanced storm water treatment system, or making changes to the operation and maintenance protocols or components for such system, to provide more effective filtration treatment of storm water prior to discharge.

   ii.   <u>Evaluation of Existing BMPs</u>. Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

   iii.   <u>Storage Capacity</u>. Installing additional storm water storage and/or modifying the Main Facility's off-hauling so the Main Facility could retain additional runoff.

   iv.   <u>Repaving.</u> Patch, pave, or otherwise resurface areas of degraded pavement or asphalt.

   v.   Upgrade forklift and front loader tires with zinc-free tires or other durable alternatives that minimize the release of dust.

d.   <u>Action Plan Review</u>. Upon receipt of Defendant's Action Plan, Plaintiff shall have thirty (30) days to object to the proposed actions. Within fourteen (14) days of receiving Plaintiff's objections, Defendant shall respond in writing why Plaintiff's objection(s) are not warranted and/or confirming modifications, changes, or additional work in connection with the Action Plan.

e.    Disputes.  The Parties shall work in good faith to resolve any disputes with respect to an Action Plan, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. If an Action Plan contains multiple, standalone BMPs, in the event of a dispute regarding the adequacy of a particular BMP, the schedule for implementing any other non-disputed BMP set forth in the Action Plan shall not be changed.

f.    Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan, as set forth in Paragraph 32.b. below.

**D.    VISUAL OBSERVATIONS**

28.    Storm Water Discharge Observations. During the Term, and within the Wet Season, appropriately trained staff of Defendant shall conduct visual observations of Discharge Points during the Facility's operating hours during rain events. Such inspections shall comply with all requirements of Section XI.A.2 of the General Permit.

29.    Monthly Visual Observations.

a. During the Term, appropriately trained staff of Defendant shall conduct monthly visual observations of the Main Facility's exterior and outdoor areas. Such inspections shall comply with all requirements of Section XI.A.1 of the General Permit. Such monitoring shall include outfalls, Discharge Points, outdoor industrial equipment and storage areas, outdoor industrial activities areas, BMPs, track-out, and all other potential sources of industrial pollutants. All Discharge Points shall also be inspected for accumulation of dust, sediment, sand, grit, oily substances, oily sheens upon any standing water, and other

1    materials associated with operations at the Main Facility. During
2    the Wet Season, such inspections shall further include
3    observations of all storm water BMPs that are used only during
4    the Wet Season at the Main Facility to ensure that operational
5    BMPs are being implemented, and structural BMPs are in good
6    condition or working order. Such inspections shall further include
7    observation as to whether there are any non-storm water
8    discharges from the Main Facility.

9    b.   During the Term, appropriately trained staff of Defendant shall
10        conduct monthly visual observations of the Parking Lot to ensure
11        compliance with Paragraph 19 herein.

12    30.   Visual Observations Records. Defendant shall maintain observation
13    records, including as necessary, photographs to document compliance with
14    Paragraphs 28 and 29. Such records shall include, but not be limited to, the persons
15    who completed the inspection, the date of the inspection, and notes sufficient to
16    describe the completed activity and all observations thereof, including but not limited
17    to: (i) whether BMPs are in a proper, working condition; (ii) whether any repair,
18    replacement, or operation and maintenance is needed for any BMPs; (iii) other
19    conditions that have the potential to lead to pollutant loading in storm water
20    discharges; and (iv) photographs of all the foregoing as applicable.  Defendant shall
21    provide Plaintiff with a copy of those records within seven (7) days of receipt of a
22    written request from Plaintiff for those records.

23    31.   Employee Training Program. Within ninety (90) days of the Effective
24    Date, Defendant shall develop and implement an employee training program that
25    meets the following requirements and ensures (1) that there is a sufficient number of
26    employees at the Main Facility designated to achieve compliance with the General
27    Permit and this Consent Decree ("Designated Employees"), and (2) that these
28

Designated Employees are properly trained to perform the activities required by the General Permit and this Consent Decree ("Training Program"):

      a.    <u>Materials</u>. Training materials should include, at minimum, a detailed Training Manual or Standard Operating Procedure, including drawings and diagrams where appropriate, for reference and use by Defendant's personnel to ensure effective implementation of all BMPs;

      b.    <u>Language</u>. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent. If necessary, Defendant shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the General Permit;

      c.    <u>Training Frequency</u>. Training shall be provided by a QISP familiar with the requirements of this Consent Decree and the General Permit, and shall be repeated annually, or more frequently as necessary, to ensure that all relevant employees are familiar with the requirements of this Consent Decree, the Permit, and the Facility's SWPPP. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP;

      d.    <u>Sampling Training</u>. Defendant shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory;

e.  <u>Visual Observation Training</u>. Defendant shall provide training on how and when to properly conduct visual observations to Designated Employees;

f.  <u>Non-Storm Water Discharge Training</u>. Defendant shall train all Designated Employees at the Facility on the General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

g.  <u>Hazardous Waste Training</u>. Defendant shall train all Designated Employees at the Facility on proper hazardous material handling, waste control, and disposal procedures;

h.  <u>Employee Parking Training</u>. Defendant shall train all Facility employees on the Facility's designated employee parking locations;

i.  <u>Employees</u>. All Designated Employees at the Facility shall participate in the Training Program annually. New Designated Employees shall participate in the Training Program within thirty (30) days of their hiring date; and

j.  <u>Records</u>. Defendant shall maintain training records to document compliance with this Paragraph and shall provide Plaintiff with a copy of these records within seven (7) days of receipt of a written request.

32.  <u>SWPPP Revisions</u>.

a.  <u>Initial SWPPP Revisions</u>. No later than December 15, 2025, Defendant shall amend the Facility's SWPPP to incorporate the requirements in this Consent Decree and comply with the General Permit. No later than December 15, 2025, Defendant shall submit the complete, updated SWPPP to Plaintiff for Plaintiff's review

and comment. The complete, updated SWPPP shall contain, at a minimum, the following elements:

i.    A revised pollutant source assessment, including all elements required by Section X.G of the General Permit as well as assessments of the potential for the Main Facility's storm water discharges to contain pollutants for which the Receiving Waters are 303(d) listed and/or have Total Maximum Daily Loads;

ii.    A detailed narrative description and assessment of each industrial activity with the potential to impact storm water quality occurring at the Main Facility as required by Section X.G of the General Permit;

iii.    A detailed narrative description and assessment of the Main Facility's storm water and sanitary infrastructure;

iv.    Descriptions of all BMPs in accordance with Section X.H.4 of the General Permit, including, without limitation, BMPs required by this Consent Decree;

v.    A set of site maps that comply with Section X.E of the General Permit, a depiction of the Parking Lot, and accurately depicting the different drainage areas and flows, including from the Main Facility's roof;

vi.    A MIP as required by Sections XI and X.I of the General Permit;

vii.    A designation (by position/title) of employees responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation, e.g., visual inspection of each specific area, monitoring each specific BMP, sampling, etc.; and

viii.   A Training Program as described above in Paragraph 31.

b.   Additional SWPPP Revisions.

i.   Within forty-five (45) days after approval of any Action Plan by Plaintiff (or resolution pursuant to Dispute Resolution), Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan and submit the complete, updated SWPPP to Plaintiff for Plaintiff's review and comment.

ii.   Within forty-five (45) days after any changes in industrial activities or sources of industrial pollutants, changes to Discharge Points, or changes to sections of the SWPPP identified in the SWPPP as requiring a SWPPP revision (including but not limited to, changes in Main Facility contacts or Pollution Prevention Team members, changes or additions of BMPs, or changes in or additions of industrial activities that impact storm water discharge), Defendant shall revise the then-current SWPPP to reflect such changes and submit the complete, updated SWPPP to Plaintiff for Plaintiff's review and comment.

c.   Review of SWPPP.  For any SWPPP updates pursuant to Paragraphs 32.a and 32.b, upon receipt of Defendant's updated SWPPP, Plaintiff shall have thirty (30) days to object, to the SWPPP revisions. Within thirty (30) days of receiving Plaintiff's objections to the SWPPP revisions, Defendant shall respond in writing why Plaintiff's objection(s) are not warranted and/or confirming modifications, changes, or additional work in connection with the SWPPP revisions.

d.  The Parties shall work in good faith to resolve any disputes in connection with the SWPPP revisions.  Any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below.  The Parties shall work cooperatively, and in good faith, to modify any of the deadlines under this Consent Decree, if necessary.

e.  Following its incorporation of proposed modification or additions (if any) into each revised SWPPP, Defendant shall upload the revised SWPPP to SMARTS.

**E.   COMPLIANCE MONITORING AND REPORTING**

33.  Site Inspections.

a.  Plaintiff may conduct one (1) annual site inspection during each Reporting Year during the Term for the purpose of ensuring compliance with this Consent Decree and the General Permit.  In the event of a dispute regarding Defendant's compliance with this Consent Decree, and to the extent that either Party asserts that additional site inspection(s) would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding any additional site inspection request(s). The Parties shall work in good faith to resolve any dispute(s) in connection with a request(s) for additional site inspections.  Any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below.

b.  Any site inspection will be limited to the exterior areas of the Facility and shall occur during normal business hours.  Plaintiff will provide Defendant with at least one week's notice prior to a site inspection requested to occur in dry weather and three days' notice, with a twenty-four hour confirmation, prior to a site

inspection requested to occur in wet weather. for any Site inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 57.

    c.  During the wet weather inspection, and to the extent that a discharge is occurring from the Main Facility's Discharge Point(s) referenced in its SWPPP, if Defendant collects a sample of industrial storm water discharge, Plaintiff may request a split sample and Defendant shall collect one, and Plaintiff's representative(s) may observe the split sample(s) being collected by Defendant's representative. Plaintiff shall pay for the costs of its requested split sampling. Defendant shall have no obligation to pay for analytical costs associated with Plaintiff's split.

    d.  Plaintiff shall be permitted to take photographs or video recording of the exterior of the Main Facility and the Parking Lot during any Site Inspection.

34.   <u>Document Provision</u>. During the Term, Defendant shall notify and submit documents to Plaintiff as follows:

    a.  Defendant shall copy Plaintiff, by electronic mail to the individual(s) designated below at Paragraph 57, on all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Main Facility that are submitted to the Regional Board, the State Board, and/or any

state or local agency, county or municipality. To the extent that the document(s) covered under this Paragraph 34.a are uploaded to SMARTS, Defendant may satisfy the requirements of this Paragraph 34.a by providing Plaintiff with quarterly reports listing all SMARTS uploads during the quarter, which quarterly report will be due on April 30, July 31, October 31, and January 31.

b.    Within three (3) business days of receipt by Defendant, send to Plaintiff, by electronic mail to the individual(s) designated below at Paragraph 57, any compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at the Main Facility received by Defendant from the Regional Board, the State Board, and/or any state or local agency, county, municipality. To the extent that the document(s) covered under this Paragraph 34.b is uploaded to SMARTS, Defendant may satisfy the requirements of this Paragraph 34.b by providing Plaintiff with quarterly reports listing all SMARTS uploads during the quarter, which quarterly report will be due April 30, July 31, October 31, and January 31.

35.    <u>Compliance Monitoring</u>. Defendant shall partially defray costs associated with Plaintiff's monitoring of Defendant's compliance with this Consent Decree during the Term by paying a single compliance monitoring payment of Twenty Thousand Dollars ($20,000.00) that shall be made within sixty (60) days of the Entry Date.  The payment pursuant to this Paragraph shall be made via check, made payable to: "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Erina Kwon, Senior Attorney, 360 E 2nd Street, Suite 250, Los Angeles, CA 90012. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

F.    **ENVIRONMENTALLY BENEFICIAL PROJECT, LITIGATION FEES AND COSTS, MISSED DEADLINES, AND INTEREST**

36.    <u>Environmentally Beneficial Project</u>. To fund environmentally beneficial project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in the Los Angeles River Watershed, Defendant shall make a payment of Sixty Thousand Dollars ($60,000.00) to Trout Unlimited made within sixty (60) days of the Entry Date, payable to Trout Unlimited and sent via overnight mail to Trout Unlimited, South Coast Chapter, 3154 Glendale Blvd, 117, Los Angeles CA 90039. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

37.    <u>Plaintiff's Fees and Costs</u>. Defendant shall make a payment of One Hundred Forty-Five Thousand Dollars ($145,000.00) to Plaintiff to partially reimburse Plaintiff for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter within forty-five (45) days of the Entry Date. The payment shall be made payable to: "California Coastkeeper" and delivered by overnight carrier to California Coastkeeper Alliance, Attn: Sean Bothwell, 1017 L St. PMB 308, Sacramento, CA 95814-3805. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

38.    <u>Stipulated Penalties</u>. In the event that Defendant fails to submit to Plaintiff any payment, document, report, or communication required by this Consent Decree within ten (10) business days of written notice from Plaintiff to Defendant of such missed payment, document, report or communication, Defendant shall pay a stipulated payment of Five Hundred Dollars ($500) per week.  Such stipulated payments shall be made by check payable to: "Trout Unlimited," and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 36. Payment shall be sent via overnight mail to Trout

Unlimited, South Coast Chapter, 3154 Glendale Blvd, 117, Los Angeles CA 90039. Defendant agrees to make the stipulated payment within fourteen (14) days after the resolution of the event that precipitated the stipulated payment liability.

## IV.    DISPUTE RESOLUTION

39.    <u>Meet and Confer</u>. Either Party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other Party in writing, pursuant to Paragraph 57, of the matter(s) in dispute and of the disputing Party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days from the date of the meet and confer.

40.    <u>Settlement Conference or Private Mediation</u>. If the Parties cannot resolve the dispute within thirty (30) days from the date of the meet and confer described in Paragraph 39, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion. Alternatively, upon the agreement of both Parties, any dispute can be addressed through private mediation.

41.    <u>Prevailing Party Fee Recovery</u>.  In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

42.    <u>Plaintiff's Waiver and Release of Defendant</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers, directors, and its agents and attorneys release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries,

divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were or could have been raised in the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

43.     Defendant's Waiver and Release of Plaintiff. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, agents, and attorneys release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice Letter and/or that were or could have been alleged in the Complaint up to and including the Termination Date of this Consent Decree.

## VI.    MISCELLANEOUS PROVISIONS

44.     No Admission of Liability. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

45.     Counterparts. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

46.     Authority. The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the Party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

47.    <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

48.    <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

49.    <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.  Each of the Parties acknowledge the confidential Communications Agreement between Plaintiff and Defendant dated [date] and agree that such Agreement is in full force and effect and is not modified by this Consent Decree.

50.    <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

51.    <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

52.    <u>Diligence</u>. Defendant shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

53.    <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the Party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one Party.

54.     <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court.

55.     <u>Assignment</u>. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) days of any assignment.

56.     <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any Party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

57.     <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

| If to Plaintiff: | If to Defendant: |
|---|---|
| Los Angeles Waterkeeper | Andrew Marks |
| Benjamin Harris | Vice President & Assistant General |
| Erina Kwon | Counsel |
| 360 E 2nd St., Suite 250 | Stericycle |
| Los Angeles, CA 90012 | 2355 Waukegan Road |
| Email: ben@lawaterkeeper.org | Bannockburn, IL 60015 |
| Email: erina@lawaterkeeper.org | Email: andrew.marks@stericycle.com |
| Phone: (310) 394-6162 | |
| | With copies to: |
| With copies to: | Robert Goodman |
| Drevet Hunt | Jon-Erik Magnus |
| California Coastkeeper | Rogers Joseph O'Donnell |
| 1017 L St PMB 308 | 311 California St., 10th Fl. |
| Sacramento, CA 95814-3805 | San Francisco, CA 94104 |
| Email: dhunt@cacoastkeeper.org | Email: rgoodman@rjo.com |
| Phone: (415) 606-0864 | Email: jmagnus@rjo.com |
| | Phone: (415) 956-2828 |

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving Party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

58.    If for any reason the Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Court and the Parties. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

588886.2

1          The Parties hereto enter into this Consent Decree and submit it to the

2    Court for its approval and entry as a final judgment.

3          IN WITNESS WHEREOF, the undersigned have executed this Consent

4    Decree as of the date first set forth below.

5

6    APPROVED AS TO CONTENT

7

8    Dated: __10/8/2025__

      *Bruce Reznik*

9          Bruce Reznik

10         Executive Director

      Los Angeles Waterkeeper

11

12   Dated: __10/9/2025__

      Ra ae  Carrasco

13         President

14         Stericycle, Inc.

15

16   APPROVED AS TO FORM

17

18   Dated: __10/8/2025__

      *Drevet Hunt*

19         Drevet Hunt

20         California Coastkeeper

      Attorney for Plaintiff

21         Los Angeles Waterkeeper

22

23   Dated: __10/8/2025__

      *Jon Erik Magnus*

24         Jon-Erik Magnus

25         Rogers Joseph O'Donnell

26         Attorney for Defendant

      Stericycle, Inc.

27

28

1    **IT IS SO ORDERED.**

2    **FINAL JUDGMENT**

3

4        Upon approval and entry of this Consent Decree by the Court, this

5    Consent Decree shall constitute a final judgment between the Plaintiff and Defendant.

6

7    Dated:  12/30/2025            CENTRAL DISTRICT OF CALIFORNIA

8

9    _____

10   HONORABLE CHARLES F. EICK
     United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28